UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
INFINITY BUSINESS SOLUTIONS, LLC, as fiduciary of a self-funded employee welfare benefit plan,

Plaintiff,

-against-

LEADING EDGE ADMINISTRATORS LLC, OMNI ADMINISTRATORS INC. d/b/a LEADING EDGE ADMINISTRATORS, ANTHEM HEALTHCHOICE ASSURANCE, INC., NORTHWELL HEALTH, INC., and HUNTINGTON HOSPITAL ASSOCIATION d/b/a HUNTINGTON HOSPITAL,

Defendant(s).
-------------------------------------------------------------------x

**Case No.: 26-CV-4192**

**COMPLAINT**

Plaintiff, INFINITY BUSINESS SOLUTIONS, LLC, in its capacity as sponsor and fiduciary of a self-funded employee welfare benefit plan ("Plaintiff"), as and for its Complaint against the above-named Defendants, by its attorneys Trivella & Forte, LLP, alleges as follows:

## INTRODUCTION

1. This is an action by INFINITY BUSINESS SOLUTIONS, LLC, a New York corporation that sponsors a self-funded employee health benefit plan within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001 *et seq.*, as fiduciary of a self-funded employee welfare benefit plan, against LEADING EDGE ADMINISTRATORS LLC, OMNI ADMINISTRATORS INC. d/b/a LEADING EDGE ADMINISTRATORS, ANTHEM HEALTHCHOICE ASSURANCE, INC., NORTHWELL HEALTH, INC., and HUNTINGTON HOSPITAL ASSOCIATION d/b/a HUNTINGTON HOSPITAL (collectively "Defendants"), to collect amounts due and owing resulting from the processing, repricing, adjudication, payment, retention, and refusal to explain or unwind hospital claim overcharges by Defendants, individually, collectively, jointly and severally, and/or acting in

concert, in connection with inpatient services rendered to a covered participant at Huntington Hospital from approximately January 8, 2024 through January 11, 2024, paid from assets of Plaintiff's self-funded employee health benefit plan.

## JURISDICTION AND VENUE

2. This Court has jurisdiction under 29 U.S.C. §1132(e) and 28 U.S.C. §1331 because this action arises under ERISA.

3. Supplemental jurisdiction exists under 28 U.S.C. § 1367 for related state law claims.

4. The Court has personal jurisdiction over Defendants pursuant to N.Y. C.P.L.R. § 301 as Defendants are domiciled in New York, authorized to do business in New York, and/or at home in the State of New York.

5. The Court has personal jurisdiction over Defendants pursuant to N.Y. C.P.L.R. § 302(a) as the causes of action herein arise from Defendants' transaction of business within the State of New York.

6. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) and 29 U.S.C. §1132(e)(2) because a substantial part of the events or omissions giving rise to the claims occurred within this District, and one or more Defendants reside or conduct business here.

## PARTIES

7. Plaintiff, Infinity Business Solutions, LLC, is a New York limited liability company with its principal place of business at 36 Oswego Street, Baldwinsville, New York 13027.

8. Plaintiff sponsors and funds a self-funded employee health benefit plan (the "Plan") for eligible employees and dependents, including a self-funded employee welfare benefit plan within the meaning of ERISA, 29 U.S.C. § 1002(1).

9. Plaintiff is a fiduciary of the Plan and brings this action on behalf of itself and, where applicable, on behalf of the Plan.

10. Defendant Leading Edge Administrators LLC ("LEA"), is a Florida limited liability company with office located at 4631 Woodland Corporate Blvd, Ste 310, Tampa, Florida 33614.

11. Defendant Omni Administrators Inc. d/b/a Leading Edge Administrators ("Omni") is a New York corporation with office located at 14 Wall Street, Suite 5B, New York, NY 10005.

12. Upon information and belief, LEA and Omni are affiliated entities that jointly operated, administered, marketed, or performed third-party administrative services under the "Leading Edge Administrators" name, with Omni providing third-party administrative services to New York self-funded employee welfare benefit plans. Upon information and belief, one or both entities participated in the administration, adjudication, pricing, payment, or post-payment review of the claim at issue. LEA and OMNI are collectively referred to herein as "Leading Edge".

13. Defendant Leading Edge is a third-party administrator ("TPA") providing administrative services to self-funded employer health plans, including claim intake, adjudication, payment processing, and related functions.

14. Defendant Anthem HealthChoice Assurance, Inc. ("Anthem") is a New York corporation, with office located at 9 Pine Street, 14th Floor, New York, NY 10005.

15. Defendant Anthem provides access to its preferred provider organization ("PPO") network negotiated provider rates, and related claim-pricing and administrative services.

16. At all relevant times, Defendant Huntington Hospital Association d/b/a Huntington Hospital ("Huntington Hospital") was and is a domestic not-for-profit corporation duly organized and existing under the laws of the State of New York, with its principal place of business located at 270 Park Avenue, Huntington, New York 11743.

17. At all relevant times, Defendant Huntington Hospital was engaged in the business of owning, operating, managing, and maintaining a hospital providing medical care and treatment to the public.

18. Defendant Northwell Health, Inc. ("Northwell") is a New York not-for-profit corporation that owns and operates the Northwell Health system, of which Huntington Hospital is a part.

19. Defendant Northwell maintains offices at 2000 Marcus Avenue, New Hyde Park, New York 11042.

20. At all relevant times, Defendant Northwell Health was a New York not-for-profit corporation that owned, operated, managed, controlled, and/or maintained Huntington Hospital, and exercised dominion and control over its policies, procedures, staffing, and operations.

21. Upon information and belief, at all relevant times, Huntington Hospital acted by and through Northwell, and Northwell exercised dominion and control over policies, billing, collections, reimbursement practices, and/or retention of funds relating to Huntington Hospital claims.

## FACTUAL BASIS FOR CLAIMS

22. Plaintiff sponsors a self-funded employee welfare benefit plan within the meaning of ERISA, 29 U.S.C. § 1002(1) (the "Plan").

23. Plaintiff contracted with Leading Edge to act as its TPA (third-party administrator).

24. Upon information and belief, Leading Edge contracted with Anthem to provide access to Anthem's PPO network and its negotiated provider rates for claims submitted by participating providers, including, upon information and belief, Huntington Hospital ("Network Agreement(s)").

25. The Network Agreement(s) were intended to confer a direct benefit upon participating payors and self-funded plans accessing Anthem's PPO network, including Plaintiff and the Plan, by requiring participating providers to accept Anthem's negotiated reimbursement rates and applicable payment methodologies as the allowed amounts for covered services.

26. Plaintiff and the Plan were intended beneficiaries of the Network Agreement(s) because the negotiated rates and payment limitations directly determined the amount payable from Plan assets for claims submitted by Huntington Hospital for covered Plan participants.

27. The aforesaid arrangements were material to Plaintiff's decision to fund claims through Leading Edge and Anthem because the value of a PPO arrangement depends on the accurate application of negotiated provider rates and corresponding payment methodologies.

28. In or about, January 2024, a Plan participant received inpatient services at Huntington Hospital for the period of approximately January 8, 2024 through January 11, 2024.

29. A claim was submitted for said services (the "Claim").

30. On or about January 24, 2024, Huntington Hospital transmitted claim-related materials reflecting "Total Charge: $31,521.86."

31. The Claim was thereafter routed through the Plan's administration and network-pricing process.

32. Upon information and belief, Leading Edge and/or Anthem exercised authority or control over one or more of the following: claim intake, application of network pricing, adjudication logic, issuance or authorization of payment, use of Plan assets for claim payment, post-payment review, recovery of overpayments, and communication of the amount allegedly due.

33. Upon information and belief, approximately $182,521.81 in Plan assets was allowed, issued, or otherwise paid on the claim for Huntington Hospital in connection with the Claim.

34. That amount exceeded Huntington Hospital's reflected charges by approximately $150,999.95.

35. Plaintiff questioned the discrepancy and sought an explanation and supporting documentation.

36. In response to Plaintiff inquiry, Huntington Hospital and/or Northwell represented that the claim was "billed and paid correctly by the contracted rate," that "No-overpayment" existed in the amount demanded, and that the expected due under a Diagnosis-Related Group (DRG) based agreement with Anthem for DRG 793 on a three-day stay was $182,471.90 plus pharmacy charges of $49.81.

37. Northwell further stated that insurance paid $182,156.94, the patient copay was $400.00, and the correct overpayment, if any, was only $35.23.

38. At the same time, Northwell asserted that a DRG reassignment letter was not on file, a medical record request letter was not on file, and additional support should be submitted.

39. Defendants did not provide the Anthem-Huntington agreement, the relevant reimbursement schedule, DRG support, grouper output, pricing logic, repricing history, explanation of benefits sufficient to validate the amount, or any other backup documentation necessary to verify the amount claimed.

40. Anthem correspondence concerning the claim also requested additional records, including the inpatient admission history and physical, discharge summary, physician progress

notes, and operative report if surgery was performed, indicating that additional documentation was considered necessary to complete processing of the claim.

41. The Claim data known to Plaintiff is internally inconsistent and indicative of error, overpayment, or both.

42. Defendants Anthem and Leading Edge knew or should have known that a payment materially exceeding reflected billed charges, or claim data containing contradictory billed, allowed, write-off, and non-eligible figures, required immediate investigation, validation, and, if erroneous, prompt recovery.

43. Defendants Anthem and Leading Edge nevertheless failed to prevent the payment, failed to provide the records needed to confirm its validity, failed to identify and explain the precise pricing methodology used, and failed to recover or credit the apparent overpayment.

44. Huntington Hospital and Northwell knew or should have known that they received and/or retained Plan funds far in excess of reflected charges or, at minimum, in amounts that remained disputed and unsupported by produced documentation, yet they retained those funds while refusing to authorize a refund beyond $35.23.

45. As a direct and proximate result of Defendants' acts and omissions, Plaintiff and the Plan have suffered losses of at least approximately $150,999.95, plus interest, costs, and additional consequential harm associated with investigating and unwinding the claim.

46. Plaintiff has no adequate remedy at law to obtain the claim-processing data, network-pricing support, repricing methodology, and overpayment-recovery measures required to determine the correct amount due and to ensure that any ongoing error is corrected.

47. Such overpricing has directly and proximately caused financial loss to Plaintiff.

**AS AND FOR A FIRST CAUSE OF ACTION**
**(Breach of Fiduciary Duty Under ERISA - Against Anthem and Leading Edge)**

48. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

49. At all relevant times, Anthem and Leading Edge were fiduciaries of the Plan within the meaning of 29 U.S.C. § 1002(21)(A) to the extent they exercised discretionary authority or control over plan administration, claims adjudication, claim payment, disposition of Plan assets, repricing, overpayment detection, and/or overpayment recovery.

50. As fiduciaries, Anthem and Leading Edge owed duties of loyalty and prudence and were required to act solely in the interest of the Plan and its participants and beneficiaries.

51. Anthem and Leading Edge breached those duties by, among other things:

a) causing, authorizing, or permitting payment of approximately $182,521.81 on a claim reflecting billed charges of approximately $31,521.86;

b) failing to implement and maintain prudent controls to prevent payment anomalies, repricing errors, or payments in excess of billed charges or contractual allowances;

c) failing to verify the amount allegedly due under the applicable network agreement before using Plan assets to pay the claim;

d) failing to preserve and provide the claim-pricing and contractual records necessary to validate the payment; and

e) failing to timely investigate, reverse, recoup, or otherwise recover the apparent overpayment once the discrepancy was brought to their attention.

52. As a direct and proximate result of these breaches, the Plan suffered losses in an amount to be determined at trial but believed to be no less than approximately $150,999.95.

53. Pursuant to 29 U.S.C. §§ 1109 and 1132(a)(2), Anthem and Leading Edge are liable to make the Plan whole for all losses resulting from their breaches and for such other relief as the Court deems appropriate.

54. In addition to, or in the alternative, to recovery of financial losses, Plaintiff seeks appropriate equitable relief to redress violations of ERISA and to enforce the terms of the Plan and applicable fiduciary obligation, including, as appropriate:

a) an accounting of the claim at issue, including all pricing inputs, repricing outputs, DRG logic, audit trails, payment approvals, and overpayment-recovery efforts;

b) injunctive relief requiring Anthem and Leading Edge to identify the exact contractual or pricing basis for the amount paid;

c) injunctive relief requiring Anthem and Leading Edge to undertake and document reasonable overpayment-recovery efforts;

d) equitable restitution, surcharge, disgorgement, or other equitable relief to the extent permitted by law; and

e) such other equitable relief as the Court deems just and proper.

55. Absent such relief, Plaintiff and the Plan will continue to be deprived of information and corrective action necessary to determine the proper payment amount and to protect Plan assets.

**AS AND FOR A SECOND CAUSE OF ACTION**
**(Breach of Contract - Against Leading Edge)**

56. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

57. Plaintiff and Leading Edge entered into one or more agreements pursuant to which Leading Edge agreed to provide third-party administrative services for the Plan.

58. Those agreements required Leading Edge, at minimum, to process claims in accordance with the governing plan terms, applicable pricing data, and the level of care, diligence, and accuracy reasonably expected of a competent third-party administrator.

59. Plaintiff performed its obligations under the agreements or such performance was excused.

60. Leading Edge breached the agreements by, among other things, failing to adjudicate and process the Huntington Hospital claim correctly, failing to verify the proper amount due before causing or permitting payment, failing to apply the correct pricing or repricing process, and/or failing to recover the apparent overpayment.

61. As a direct and proximate result of Leading Edge's breaches, Plaintiff has suffered damages in an amount to be determined at trial but believed to be no less than approximately $150,999.95.

**AS AND FOR A THIRD CAUSE OF ACTION**
**(Breach of Contract - Against Anthem)**

62. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

63. Upon information and belief, Leading Edge and Anthem entered into one or more agreements pursuant to which Anthem agreed to provide access to Anthem's PPO network and negotiated provider-rate pricing and repricing services for the Plan ("Network Agreement(s)").

64. Upon information and belief, the Network Agreement(s) required Anthem, at minimum, to provide the benefit of negotiated network pricing and to apply or facilitate application of the correct contractual reimbursement methodology for participating-provider claims.

65. Upon information and belief, Anthem entered into one or more provider network agreements with Huntington Hospital and/or Northwell governing reimbursement for covered

services furnished to participants of plans accessing Anthem's PPO network, including self-funded employer welfare plans such as Plaintiff's Plan.

66. Those agreements were intended to confer a direct benefit upon participating payors and self-funded plans accessing Anthem's PPO network, including Plaintiff and the Plan, by requiring participating providers to accept Anthem's negotiated reimbursement rates and applicable payment methodologies as the allowed amounts for covered services.

67. Plaintiff and the Plan were intended beneficiaries of those agreements because the negotiated rates and payment limitations directly determined the amount payable from Plan assets for claims submitted by Huntington Hospital for covered Plan participants.

68. Anthem breached said agreements by, among other things, failing to apply or facilitate application of the proper network rate or methodology, failing to verify the amount allegedly due under the governing provider agreement, and/or failing to assist in identifying and recovering the apparent overpayment.

69. As a direct and proximate result of Anthem's breaches, Plaintiff has suffered damages in an amount to be determined at trial but believed to be no less than approximately $150,999.95.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**(Accounting - Against Anthem and Leading Edge)**

70. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

71. Anthem and Leading Edge possess or control records and information uniquely necessary to determine the claim's proper reimbursement amount, including network contracts, fee schedules, claim-edit logic, DRG pricing support, repricing histories, payment records, and overpayment-recovery files.

72. Plaintiff lacks an adequate remedy at law to obtain an explanation of the payment through ordinary means because the relevant information is within Anthem's and Leading Edge's exclusive possession or control.

73. Equity therefore requires an accounting sufficient to disclose the basis on which the claim was repriced, adjudicated, paid, and not reversed.

**AS AND FOR A FIFTH CAUSE OF ACTION**
**(Unjust Enrichment - Against Huntington Hospital and Northwell)**

74. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

75. Huntington Hospital and/or Northwell received and retained Plan funds in connection with the claim at issue.

76. To the extent the amount retained exceeded the amount properly payable, Huntington Hospital and Northwell were unjustly enriched at Plaintiff's and the Plan's expense.

77. In equity and good conscience, Huntington Hospital and Northwell should disgorge and return any overpayment.

**AS AND FOR A SIXTH CAUSE OF ACTION**
**(Money Had and Received - Against Huntington Hospital and Northwell)**

78. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

79. Huntington Hospital and/or Northwell received money belonging in equity and good conscience to Plaintiff and/or the Plan.

80. Defendants benefitted from the receipt of those funds.

81. Under principles of equity and good conscience, Defendants should not retain any portion of the funds exceeding the amount properly due on the claim.

**AS AND FOR A SEVENTH CAUSE OF ACTION**
**(Declaratory Judgment – Against All Defendants)**

82. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

83. Under 28 U.S.C. §§ 2201 and 2202, an actual and justiciable controversy exists concerning:

a) the proper amount payable on the Huntington Hospital claim;

b) whether an overpayment occurred;

c) whether Anthem and/or Leading Edge breached fiduciary and contractual duties in connection with the payment; and

d) whether Huntington Hospital and/or Northwell must refund amounts retained in excess of the amount properly due.

84. Plaintiff is entitled to a declaration determining the rights and responsibilities of the parties with respect to the claim, the alleged overpayment, and recovery obligations.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that the Court render judgment in its favor and against Defendants as follows:

A. On its First Cause of Action, awarding all losses to the Plan caused by Anthem's and Leading Edge's breaches of fiduciary duty, together with all appropriate relief under 29 U.S.C. §§ 1109 and 1132(a)(2), and/or, or alternatively, granting appropriate equitable relief under 29 U.S.C. § 1132(a)(3), including accounting, injunctive relief, surcharge, equitable restitution, disgorgement, and such other equitable relief as the Court deems proper;

B. On its Second Cause of Action, awarding contract damages against Leading Edge in an amount to be determined at trial;

C. On its Third Cause of Action, awarding contract damages against Anthem in an amount to be determined at trial;

D. On its Fourth Cause of Action ordering a full accounting by Anthem and Leading Edge of the claim's repricing, adjudication, payment, and recovery history;

E. On its Fifth and Sixth Causes of Action, for judgment against Northwell and/or Huntington Hospital for any monies retained in excess of the amount properly due;

F. On its Seventh Cause of Action, declaring the rights and obligations of the parties with respect to the claim and any overpayment or recovery obligation;

G. Awarding pre-judgment and post-judgment interest;

H. Awarding attorneys' fees and costs to the extent available, including under 29 U.S.C. § 1132(g); and

I. Grant such other and further relief in favor of the Plaintiff as the Court deems just and proper.

Dated: July 13, 2026

Yours, etc.,

TRIVELLA & FORTE, LLP

/s/ ***Arthur J. Muller III***

ARTHUR J. MULLER III
*Attorneys for Plaintiff*
1311 Mamaroneck Avenue, Suite 170
White Plains, New York 10605
Tel. No.: (914) 949-9075

To: Leading Edge Administrators LLC
4631 Woodland Corporate Blvd, Ste 310
Tampa, Florida 33614

Omni Administrators, Inc.
14 Wall Street, Suite 5B
New York, NY 10005

Anthem HealthChoice Assurance, Inc.
9 Pine Street, 14th Floor
New York, NY 10005

Huntington Hospital Association
270 Park Avenue
Huntington, NY 11743

Northwell Health, Inc.
2000 Marcus Avenue
New Hyde Park, NY 11042